Receipt number CFC 100003275

ORIGINAL

FILED

SEP 15 2017

U.S. COURT OF
FEDERAL CLAIMS

## UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **Christina Micu and all others similarly situated** *Plaintiffs*, | § § § § | |
| v. | § § | No. **17-1277 L** |
| **The United States of America** *Defendant*. | § § § | |

### CLASS ACTION COMPLAINT

Christina Micu, appearing individually and on behalf of all persons similarly situated, who respectfully submit this Class Action Complaint against the United States of America, and avers as follows:

### INTRODUCTION

1.      Between August 25th and August 29th, 2017, Tropical Storm Harvey hit Houston bringing with it rainfall over four days. Many parts of Harris County and Fort Bend Counties received up to fifty inches of rain.

2.      Just as the federal government designed them to do, two large flood control reservoirs—Addicks & Barker Reservoirs—captured more than three-hundred and fifty thousand acre-feet of stormwater behind their dams to prevent flooding downstream on Buffalo Bayou and downtown Houston.

3.      The earthen dams of Addicks and Barker each have spillways at fixed elevations—108 feet for Addicks, and 104 feet for Barker. They also have design pool elevations—115 feet for Addicks, and 106 feet for Barker. All land behind the dams and below these elevations is therefore designed to be inside the respective

Received - USCFC

SEP 15 2017

reservoirs, and is property that the federal government intends to be inundated for periods of time.

4.      The federal government only owns a portion of the land inside each reservoir, but the rest is private property upon which Plaintiffs own homes and businesses. During and after Harvey, the federal government flooded many thousands of homes and businesses within Addicks & Barker Reservoirs.

5.      The federal government does not own drainage or flowage easements on the private properties inside the reservoirs. The federal government has never offered to purchase drainage or flowage easements on the private properties inside the reservoirs.

6.      As the reservoirs were designed to do, the federal government intentionally stored storm waters inside the reservoirs and on Plaintiffs properties for a public purpose, but without obtaining permission or ownership of the right to do so. Plaintiffs have been deprived of their private property, without due process, because it has been "taken for a public use, without just compensation." U.S. Const. Amend V.

7.      Plaintiffs seek compensation for the permanent taking of property and the taking of drainage or flowage easement that the federal government utilizes on their properties.

## STATEMENT OF JURISDICTION

8.      This Court has jurisdiction over this matter pursuant to 28 U.S.C § 1491(a)(1). This is a claim seeking compensation from the United States for the

taking of private property, without just compensation, for public use. This is actionable pursuant to the Fifth Amendment to the U.S. Constitution (via appropriation a/k/a inverse condemnation). Venue is proper in this Court.

## PARTIES

9.      Plaintiffs are:

    a. Christina Micu, who owns property located at 6411 Canyon Park Drive, Katy, Texas 77450. The property description is Canyon Gate Cinco Ranch Sec 7, Block 2, Lot 1, in Fort Bend County, Texas

    b. The class of people who own real property inside Addicks Reservoir at and below the design pool elevation of the dam (approximately 115 feet m.s.l.); and

    c. The class of people who own real property inside Barker Reservoir at and below the design pool elevation of the dam (approximately 106 feet m.s.l.).

10.     Defendant is the United States of America (the "United States" or "federal government"), a sovereign entity and *body politic*. Defendant answers for one or more of its agencies, especially the United States Army Corps of Engineers ("Corps of Engineers" or "Corps"), specifically in respect to the Addicks and Barker Reservoirs.

## FACTS

11.     The Addicks and Barker Reservoirs were authorized as a part of the Buffalo Bayou and Tributaries Project ("BBTP") by the Rivers and Harbors Act,

approved June 30, 1938. The BBTP was subsequently modified by the Flood Control Acts of August 11, 1939, and September 3, 1954.

12.     The BBTP provided for improvements to Buffalo Bayou and its principal tributaries, White Oak Bayou and Brays Bayou. The purpose of the project was to protect urban development in the downstream floodplain of Buffalo Bayou through the City of Houston.

13.     Addicks and Barker Reservoirs are located in southeast Texas approximately 17 miles west of downtown Houston. The reservoirs are strategically located above the confluence of Buffalo Bayou and South Mayde Creek. Below this confluence, Buffalo Bayou continues east through downtown Houston, where it joins with White Oak Bayou, and eventually becomes the Houston Ship Channel, which flows into San Jacinto Bay.

14.     The majority of both Addicks and Barker Reservoirs fall within Harris County; however, a small portion of Barker Reservoir crosses into Fort Bend County. Addicks Reservoir is situated on the north side of Interstate Highway 10 (I-10) with State Highway 6 (SH 6) bisecting the reservoir north to south. Barker Reservoir is situated on the south side of I-10, west of SH 6.

15.     The Corps began acquiring some of the lands that would become parts of the Addicks and Barker Reservoirs in the early 1940s.

16.     Only lands approximately within the 100-year pool level of the reservoirs were acquired by the Corps. The remaining lands within the design pools of the reservoirs were never acquired by the Corps, nor were any flowage, drainage

or flood easements, or rights to inundate such lands acquired by the federal government.

17.    Acquisition of lands in Barker Reservoir was completed in 1951 and in Addicks Reservoir in 1948. When the Corps acquired the lands that became Addicks and Barker Reservoir, many of the previous land owners were allowed to continue using the lands as they had been. Cattle ranching and farming (including rice farming) was allowed to continue within the reservoirs.

18.    The construction of Barker Dam began in February 1942 and was completed in February 1945. The construction of Addicks Dam began in May 1946 and was completed in December 1948.

19.    Barker Dam consists of an earthen embankment that measured 71,900 feet long and is approximately 36 feet above the stream bed at its highest point. The Barker Dam runs along the south, east and northern sides of the reservoir. There is no levee, dam or embankment on the west side of the reservoir.

20.    The Addicks Reservoir dam consists of an earthen embankment that measured 61,166 feet long and is approximately 48 feet above the streambed at the highest point. The Addicks Dam runs along the south, and east sides of the reservoir. There is no levee, dam or embankment on the west or north sides of the reservoir.

21.    Both dams have spillways that are armored with a concrete apron on either ends of each dam. These spillways are the lowest elevation of the earthen embankment.

22.     The lowest elevation of the Addicks spillway is 108 feet. The level of the design pool elevation is approximately 115 feet.

23.     The lowest elevation of the Barker spillway is 104 feet.  The level of the design pool elevation is approximately 106 feet.

24.     Upon information and belief, the federal government designed the elevation of the Addicks & Barker Dams such that the reservoirs will handle the Probable Maximum Precipitation ("PMP") event without overtopping the dams. PMP is defined by the National Weather Service as "theoretically, the greatest depth of precipitation for a given duration that is physically possible over a given storm area at a particular geographical location at a certain time of the year."

25.     The PMP greatly exceeds the 100-year flood event. This means the reservoirs are designed to hold stormwaters greater than a 100-year event. Upon information and belief, the elevation of the PMP floods in Addicks and Barker Reservoirs is several feet higher than the lowest level of the spillways.

26.     The operational objective of Addicks and Barker Reservoirs is to reduce flood damages to downstream interests along Buffalo Bayou resulting from storm events and above normal flows. Except for periods of heavy rainfall, Addicks and Barker Reservoirs do not normally impound water.

27.     Under normal operations, when one inch of rain falls in the watershed below the dams, the federal government closes the gates of Addicks and Barker so that there are no releases until after the rainfall event. The dams are designed and operated to impound all stormwater from the upstream watershed.

28.    Upon information and belief, the federal government obtained title to land inside Addicks and Barker Reservoirs sufficient to hold the 100-year flood event. The 100-year flood has a one percent chance of being equaled or exceeded during any given year.

29.    In Addicks, the elevation of the 100 year flood is 100.5 feet. The federal government owns land in Addicks up to approximately 102 feet elevation.

30.    Land between 102 feet and the approximately 115] elevation of the Addicks design pool is not owned by the federal government and the federal government has not acquired easements or other rights to store floodwaters on these properties.

31.    During tropical storm Harvey, the water level in Addicks reached 109.1 feet, and therefore the federal government stored floodwater on all private properties above 102 feet elevation but below the approximate elevation of the design pool without having any right to do so. Many private properties remained submerged for weeks.

32.    Even though floodwater in Addicks did not reach the elevation of the design pool, all private properties below the design pool faces the risk of intentional inundation by the federal government.

33.    In Barker, the elevation of the 100-year flood is 95.5 feet. The federal government owns land in Barker up to approximately 95.5 feet elevation.

34.    Land between 95.5 feet and the approximately 106 feet elevation of the Barker design pool is not owned by the federal government and the federal

7

government has not acquired easements or other rights to store floodwaters on these properties.

35.   During tropical storm Harvey, the water level in Barker reached 101.5 feet, and therefore the federal government stored floodwater on all properties above 95.5 feet but below 101.5 feet without having any right to do so. Many private properties remained submerged for weeks.

36.   Even though floodwater in Barker did not reach the elevation of the spillway or design pool, all private properties below the design pool faces the risk of intentional inundation by the federal government.

37.   The following figures show the 100-year flood pool in red for Addicks and Barker, and the limit of federally-owned land as a purple line.





Figure 3. Approximate flood pools for Barker Reservoir

US Army Corps of Engineers
Galveston District

Master Plan
Addicks and Barker Reservoirs

## Intentional Inundation During Tropical Storm Harvey

38.    Between August 25th and August 29th, 2017, Tropical Storm Harvey hit Houston bringing with it rainfall over four days. Many parts of Harris County and Fort Bend Counties received up to fifty inches of rain.

39.    Both Addicks and Barker Reservoirs operated as designed and detained floodwaters.

40.    The floodwaters in both reservoirs exceeded the 100-year flood pool elevation.

41.    The floodwaters in both reservoirs exceeded the boundaries of federally-owned property.

42.    The federal government stored its floodwaters on private property owned by the Plaintiffs.

43.    The federal government does not own any right to store floodwater on Plaintiffs' private property. The federal government has never made an offer to Plaintiffs to purchase an easement or other property interest for the storage of floodwaters.

44.    The federal government has never attempted to use its power of condemnation to acquire an easement or other property interest from Plaintiffs.

45.    The federal government does not have Plaintiffs' permission to store its floodwaters on Plaintiffs' property.

46.    Many thousands of Plaintiffs' properties stored federal floodwaters for days and weeks after August 25th.

47.    The federal government constructed and operates the Addicks and Barker Reservoirs for a public purpose, namely to prevent flooding downstream along Buffalo Bayou and downtown Houston.

48.    The federal government has never compensated or offered to compensate Plaintiffs to use their property to store floodwaters.

## CAUSES OF ACTION

### Count I: Permanent Taking Of Property Without Just Compensation In Violation Of The Fifth Amendment

49.    Plaintiffs re-allege paragraphs 1 through 48 of this Class Action Complaint and incorporate same by reference.

50.    As a direct, natural, and probable consequence of the Addicks and Barker Reservoir projects, including the continued operation and maintenance attendant to these projects, Plaintiffs have been deprived of the use, occupancy and enjoyment of their immovable property (and the business and improvements), resulting in a permanent taking of their property for a public use, without payment of just compensation.

51.    Because the Government's actions in connection with the Addicks and Barker Reservoir projects were undertaken with disregard for the consequences to Plaintiffs' properties, and because the consequences to Plaintiffs' properties were the direct, natural, and intended result of authorized activities by the federal government in connection with the Addicks and Barker Reservoir projects, the federal government's intent to invade Plaintiffs' protected property interests is clear.

52.    Further to their immovable property losses, Plaintiffs have been deprived of the benefits and profits attendant to the continued operation of their commercial ventures, all as a direct, natural or probable consequence of these federal projects. Full economic damages are sought.

### Count II: Taking Of Flowage And Drainage Servitudes Without Just Compensation In Violation Of The Fifth Amendment

53.    Plaintiffs re-allege paragraphs 1 through 52 of this Class Action Complaint and incorporate same by reference.

54.    As a direct, natural, and probable consequence of the Addicks and Barker Reservoir projects, including the continued operation and maintenance

attendant to these project, Plaintiffs' properties have been subjected to actual flooding and/or the risk of frequent and inevitably recurring flooding, such that Plaintiffs have been deprived of the use, occupancy and enjoyment of their immovable property (and the business and improvements), resulting in a permanent taking of their property for a public use, without payment of just compensation. The flooding of Plaintiffs' property is recurring and is necessarily incident to, and an inevitable consequence of, the continued operation and maintenance of the Addicks and Barker Reservoir projects by Defendant.

55.    Because the Defendant's actions in connection with the Addicks and Barker Reservoir projects were undertaken with disregard for the consequences to Plaintiffs' properties, and because the consequences to Plaintiffs' properties were the direct, natural, and intended result of authorized activities by the federal government in connection with the Addicks and Barker Reservoir projects, the federal government's intent to invade Plaintiffs' protected property interests is clear.

56.    As a result of the foregoing, and in addition to the other causes of action asserted herein, the United States has taken permanent easements or servitudes of flowage and drainage over Plaintiffs' property, which it has permanently taken for a public purpose, without just compensation.

### Request For Class Certification

57.    Plaintiffs re-allege paragraphs 1 through 56 of this Class Action Complaint and incorporate same by reference.

58.     Plaintiffs bring this action individually and on behalf of all other persons similarly situated (*i.e.* property owners residing in, owning property in and/or engaging in commercial enterprises inside the Addicks and Barker Reservoirs below respective design pool elevations, whose property was appropriated by the United States, all as described *supra*.)

59.     Maintaining this action as a class action pursuant to RCFC 23 is appropriate because:

a.  The class is comprised of at several thousands of properties located in Harris and Fort Bend Counties and is so numerous that joinder of all members is impracticable.

b.  There are questions of law and fact common to the class (*i.e.* the action of the United States in creating, maintaining, and operating the Addicks and Barker Reservoirs, with the direct, natural or probable consequence of these federal projects being the taking of the Plaintiffs' property (as well as that of others similarly situated), without just compensation).

c.  The claims of the representative parties and parcels are typical of the claims of the proposed class.

d.  The named Plaintiffs (as representative parties) will fairly and adequately protect the interests of the putative class.

D.    For such other general, legal and equitable relief which this Court is empowered to provide, and to which Plaintiffs are entitled.

Respectfully submitted,

IRVINE & CONNER PLLC

by:___*s/  Charles Irvine*___
    Charles Irvine
    *Attorney of Record*
    4709 Austin Street
    Houston, Texas 77004
    713-533-1704
    713-524-5165 (fax)
    charles@irvineconner.com

OF COUNSEL
Lawrence G. Dunbar
Dunbar Harder PLLC
One Westoffice Center
10590 Westoffice Drive
Suite 2000
Houston, Texas 77042
713-782-4646
ldunbar@dunbarharder.com

**Counsel for Plaintiffs.**
*Pro Hac Vice Motion and Application
for Admission Pending*

60.    Plaintiffs have retained counsel who are experienced in and capable of prosecuting class action litigation; said counsel has and will continue to devote the appropriate resources necessary to prosecute these claims.

## PRAYER

WHEREFORE, premises considered, Plaintiffs pray:

A.    That this matter be maintained and certified as a class action on behalf of all those persons residing, owning property and/or engaging in commercial enterprises in Harris and Fort Bend Counties, which property was taken by the United States for public purpose within the Addicks and Barker Reservoir projects, without just compensation;

B.    For judgment in their favor, individually and on behalf of all persons similarly situated, and against the United States of America, finding that Plaintiffs' property, as well as the property of all persons similarly situated, has been taken for a public purpose entitling Plaintiffs, and all persons similarly situated, to just compensation in accordance with the Takings Clause of Amendment V to the United States Constitution;

C.    For an award of all reasonable costs, disbursements, and expenses, including reasonable attorney, appraisal, expert witness and engineering fees pursuant to 42 U.S.C. § 4654(c), plus appropriate interest, compounded (per USCFC jurisprudence), legal interest pursuant to 28 U.S.C. § 1961, and costs pursuant to 28 U.S.C. § 1920; and